**In re GRAND JURY OF the SOUTHERN DISTRICT OF ALABAMA.**

Crim. No. 80–00024–B.

United States District Court,
S. D. Alabama, S. D.

May 30, 1980.

William A. Kimbrough, Jr., U. S. Atty., Ginny S. Granade, Asst. U. S. Atty., Mobile, Ala., for plaintiff.

James F. Holderman, Sonnenschein, Carlin, Nath & Rosenthal, Darrell McGowen, McDermott, Will & Emery, Chicago, Ill., Alton R. Brown, Jr., Mobile, Ala., for defendants.

## MEMORANDUM OF DECISION

HAND, District Judge.

On April 15, 1980, the grand jury, sitting in the Southern District of Alabama, indicted E. A. Gregory, Vonna Jo Gregory, and three others for bank fraud. The indictment consisted of twelve separate counts. *United States v. E. A. Gregory et al.,* 508 F.Supp. 1218 (S.D.Ala.1980). After considering various arguments by the defendants attacking the sufficiency of the indictment, the Court held that the indictment contained fatal defects; on May 27, 1980 it dismissed the indictment as against all of the defendants.

On May 29, 1980 the Gregorys filed a motion to stay and terminate all grand jury proceedings in the Southern District of Alabama insofar as those proceedings related to or dealt with the Gregorys. As grounds for their motion, the Gregorys cited: 1) abusive prosecutorial conduct violative of the secrecy requirement of Fed.R.Crim.P. 6(e); 2) prejudicial publicity in the Southern District which was allegedly "designed to inflame the public and the grand jurors against the Gregorys,"; and 3) violations of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1867. For the reasons set forth below the Court denies the motion to stay and terminate the grand jury proceedings.

### I. Jurisdiction

■ Federal courts are not common law courts of general jurisdiction. Limited by the case-and-controversy requirement of ar-

ticle III of the Constitution[1] and the further requirement that Congress must provide, in the usual case, a statutory grant of jurisdiction,[2] the first inquiry which the Court must address is the precise basis upon which its jurisdiction rests.

"The grand jury has been variously viewed as an arm of the court, as an instrumentality of the people, and as an adjunct of the judiciary but with power to act, within certain bounds, independently of the traditional branches of government." *United States v. Briggs*, 514 F.2d 794, 806 (5th Cir. 1975). (footnotes omitted).[3] No express act of Congress specifically provides that federal courts shall maintain supervision over a sitting grand jury.[4] The general rule is, however, that, whatever the source of the power, "the powers of the grand jury are not unlimited and are subject to the supervision of a judge ...." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); *e. g., United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974) ("judicial supervision" limits grand jury's power in light of common law and the

Constitution). So, for the purposes of this motion, a motion in which the district court is asked to exercise its supervisory authority, the Court need not inquire into the specialized motions which help to form the case-or-controversy requirement: ripeness[5] and standing.[6] *But cf. United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975) (When named as unindicted coconspirators in a federal indictment, before the propriety of grand jury action may be challenged the requirements of article III must be met by those bringing challenge.).[7]

## II. Prosecutorial Conduct and Rule 6(e)

### A. The Allegations

Having resolved certain threshold issues, the Court turns to the merits of the motion. Several newspaper reports which reported the May 27th dismissal of the Gregorys' indictment either quote the U. S. Attorney, William A. Kimbrough, or acknowledge him as being the source of information regarding the future intentions of the government with respect to the Gregorys. The petitioners argue that these news reports evidence

1. U.S.Const. art. III, § 2. *E. g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

2. *Id. E. g.,* 28 U.S.C. §§ 1330–1364.

3. In *United States v. Briggs* the Fifth Circuit expressly refused to adopt any one of the three characterizations. 514 F.2d at 806–07. The court concluded, however, "that a federal court has the *power* to expunge unauthorized grand jury action." *Id.* at 807 (emphasis added). Annot., 28 A.L.R.Fed. 851 (1976) (references to unindicted persons).

4. The enabling act for the *Federal Rules of Crim. Procedure*, 18 U.S.C. § 3771, authorizes the Supreme Court to prescribe rules of pleading, practice, and procedure for criminal prosecutions. One such rule, Fed.R.Crim.P. 6(a), authorizes the district court to summon grand juries "as the public interest requires." Fed.R. Crim.P. 6(a). However, the rules do not give the district court express, continuing supervision over the grand jury.

5. The ripeness doctrine bars courts from considering claims which are distant and speculative. The danger which motivates a litigant must be real and immediate. *Poe v. Allman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). The Gregorys are asking this Court,

basically, to take remedial steps when nothing has happened.

6. The standing doctrine holds that one must have a personal stake in a dispute as well as some actual injury. *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

7. The Fifth Circuit has, in dictum, acknowledged that the "target" of an ongoing grand jury investigation may petition the district court for dismissal of the grand jury. *In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980). When the Seventh Circuit Court of Appeals considered the issue of dismissing a grand jury upon petition to the district court by a supposed target of the grand jury, the Court assumed *sub silento* that the requirements of article III were satisfied. Matter of the *Special April 1977 Grand Jury*, 587 F.2d 889 (7th Cir. 1978). Both of these cases, then, implicitly recognize the proposition that *prior to indictment* a person who considers himself the target of a grand jury proceeding may petition the district court for limited relief, which limited relief is consistent with the district court's supervisory role over the grand jury.

a breach of the grand jury secrecy. Fed.R. Crim.P. 6(e). They contend that the purpose of "such widespread media-mongering by the chief federal prosecutor of this District," Petitioners' Brief at 2, is "to inflame and prejudice the public and the grand jury against the Gregorys." *Id.* Petitioners urge the Court to stay further grand jury proceedings related to the Gregorys until the Court determines, at a hearing on the matter, the scope of the "prosecutor's prejudicial actions and the motivation behind those actions." *Id.* at 1221.

## B. A Prima Facie Case

The Fifth Circuit, in a case of first impression, has recently examined the issue of when a person alleging a violation of Rule 6(e) based upon news media reports has established a prima facie case and the appropriate remedy where a violation is made out. In *In re Grand Jury Investigation*, 610 F.2d 202 (5th Cir. 1980), the court noted two general classes of remedies for a Rule 6(e) violation. The first class of remedies include dismissal of the indictment, quashing a subpoena, and dismissal of the grand jury.

A criminal defendant who seeks to obtain dismissal of an indictment, a person subpoenaed to testify before the grand jury who requests the court to quash the subpoena, or *the target of an ongoing grand jury investigation who seeks to have the grand jury dismissed bears a heavy burden in attempting to justify such relief.*

*Id.* at 219 (emphasis added; footnote omitted). The second class of remedies include contempts;[8] a prima facie case to secure a hearing on whether to impose contempt sanctions does not require "as strong a showing" as is need in the first class of remedies. *Id.*

 The remedy which the petitioners seek for the alleged Rule 6(e) violation is dismissal of the grand jury. Such a remedy, if granted, would be a serious interference with the grand jury process. The petitioners have, in the opinion of the Court,

failed to carry their "heavy burden in attempting to justify such relief." 610 F.2d at 219. Even if the Court takes as true the allegations of the petitioners that the U. S. Attorney was the source of the information contained in the published newspaper articles,[9] and further assuming that the disclosures are covered by Rule 6(e), the Court holds that the petitioners have failed to carry the heavy burden necessary to warrant the type of extreme interference with the grand jury process requested by the petitioners. Even at the stage in a criminal proceeding where courts occasionally intervene and bar further prosecution by dismissing an indictment because it is technically defective or violative of due process. *see, e. g.,* p. 1214 *infra* (discussing due process and prosecutorial vindictiveness), "[i]t does not appear that any indictment has thus far been dismissed on th[e] ground" that it was "induced by prejudicial publicity". 8 *Moore's Federal Practice* ¶ 6.03[4], at 6–61 (2d ed. 1979); *United States v. Tallant,* 407 F.Supp. 878 (N.D.Ga. 1975); *United States v. Mitchell,* 372 F.Supp. 1239 (S.D.N.Y.), *appeal dismissed sub nom., Stans v. Gagliardi,* 485 F.2d 1290 (2d Cir. 1973); *United States v. Archer,* 355 F.Supp. 981 (S.D.N.Y.1972), *rev'd on other grounds,* 486 F.2d 670 (2d Cir. 1973); *United States v. Sweig,* 316 F.Supp. 1148 (S.D. N.Y.), *aff'd,* 441 F.2d 114 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1970); *United States v. Kahaner,* 204 F.Supp. 921 (S.D.N.Y.1962), *aff'd,* 317 F.2d 459 (2d Cir.), *cert. denied sub nom., Corallo v. United States,* 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963) and *Keogh v. United States,* 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65 (1963). This Court will not bar a potential investigation by the grand jury on the basis of pre-indictment publicity when the settled law is that pre-indictment publicity is an inadequate grounds upon which to base the dismissal of an otherwise properly returned indictment. Were the Court to grant the petitioners' motion on

---

8. Fed.R.Crim.P. 6(e)(2) provides: "A knowing violation of Rule 6 may be punished as a contempt of court."

9. The offending articles are attached as an appendix.

the basis of the factual grounds alleged the public's interest in the fair administration of criminal justice would be dealt a severe blow.

## C. A Constitutional Violation?

As already noted, the contention of the petitioners that the Court should stay or dismiss grand jury proceedings as they may relate to the Gregorys does not withstand analysis under general principles of federal common law. Likewise, neither do constitutional safeguards afford the relief which the petitioners seek.

■■■ The unarticulated thrust of the petitioners' motion is to have this Court enjoin the U. S. Attorney from pursuing whatever plans, if any, which he may have for prosecuting the Gregorys. This approach is seriously defective. Whatever collateral attacks an indictment may be subject to after it is returned, it is the exclusive authority and absolute discretion of the U. S. Attorney to decide whether to prosecute a case. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). "[A]s an incident of the constitutional separation of powers, . . . the courts are not free to interfere with the free exercise of the discretionary powers of the attorneys of the United States over criminal prosecutions." *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (en banc), *cert. denied sub nom., Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Only in those rare situations where the decision to prosecute is so abusive of prosecutorial discretion as to encroach on constitutionally protected due process rights will the judiciary intervene. *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (prosecutorial vindictiveness may amount to a due process violation where reindictment charged more serious crimes); *Jackson v. Walker,* 585 F.2d 139 (5th Cir. 1978) (prosecutorial vindictiveness); *Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir.

1977) (prosecutorial vindictiveness). But the prosecutor is never enjoined by the courts from exercising his discretion to present evidence to the grand jury prior to indictment. Prior to indictment, the grand jury and the prosecutor work hand-in-hand to investigate criminal wrongdoing free from interference by the courts. *United States v. Cox; e. g., Dresser Industries, Inc. v. United States,* 596 F.2d 1231, 1237 (5th Cir. 1979) ("The decision to prosecute is largely unreviewable by the courts."). Therefore, the Court holds that, assuming the conduct of the U. S. Attorney to be everything which the petitioners allege, due process would not entitle the petitioners to the stay or the dismissal which they seek.

## III. Biased Grand Jurors

As already noted in the Court's discussion regarding the alleged Rule 6(e) violation, pre-indictment publicity is an inadequate reason to dismiss a grand jury. To the extent that petitioners contend that they are entitled to have their case presented to an unbiased grand jury (if, indeed, it is to be once again presented), they are mistaken. No Court has ever held that grand jurors must be absolutely unbiased.[10] One of the historical roles of the grand jury is to act as the conscience of a community by injecting the values of the community into their deliberative process. "[T]he grand jury, which merely prefers the charge, should be scrupulously fair but not necessarily uninformed or impartial. Thus cases have held that an attack for bias will not lie." 1 C. Wright & A. Miller, *Federal Practice and Procedure* § 102 at 157 (1969); *e. g., Estes v. United States,* 335 F.2d 609, 613 (5th Cir. 1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). The general presumption is that grand juries will faithfully perform their duties. The law does not require that grand juries be shielded from news reports. The personal knowledge of individual grand jurors plays a role in the decision-making process of the grand jury.

> Historically, the bias of grand jurors was considered important: a grand juror with a bias was often able to appraise the evidence presented against the accused more critically.

---

**10.** By contrast, petit jurors are subject to voir dire examination on the issue of their biases; if found to be biased, they are excluded.

■ "The challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors.... In other words, the status of a member of a grand jury may not be questioned except for lack of legal qualifications." *Estes v. United States*, 355 F.2d at 613 (quoting *United States v. Knowles*, 147 F.Supp. 19, 20–21 (D.D.C.1957)). This Court refuses to stay the grand jury proceedings based upon the bald allegations of the petitioners that the recent newspaper publicity will prejudice the grand jury against them.

IV. Selection of Grand Jurors

■ The petitioners also challenge the manner in which certain members of the grand jury were selected. Grand jury selection is governed by the provisions of the Jury Selection and Service Act of 1968. 28 U.S.C. §§ 1861–1867. The petitioners lack standing to challenge the selection of the grand jurors. The Jury Selection and Service Act allows only the "defendant" to challenge the process within either seven days after discovering some noncompliance or during the voir dire examination. Obviously, the petitioners are not defendants. Therefore, they lack standing under the Act to challenge the jury selection process. 28 U.S.C. § 1867(a). Moreover, the Act provides that "[t]he procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime ... may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [28 U.S.C. §§ 1861–1867.]" *Id.* at § 1867(e).

■ The *Federal Rules of Criminal Procedure* provide one additional mechanism for challenging the array of jurors on the grand jury. Rule 6(b)(1) allows "a defendant who has been held to answer in the district court" to challenge the array of jurors on the ground that the array was not chosen in accordance with the law or on the ground that an individual juror is not legally qualified. Fed.R.Crim.P. 6(b)(1). In its effort to be complete, the Court addresses this argument only as an abstraction. The petitioners have not been held to answer in the district court. The Magistrate has not held a preliminary hearing in which the petitioners were required to plead as to any offenses lodged against them. Fed.R.Crim.P. 5(c). That being the case, the triggering mechanism which is a prerequisite to a Rule 6(b)(1) challenge has yet to occur.

VI. Order

For the reasons stated above, it is hereby ordered that the motion of the petitioners to stay and dismiss the grand jury proceedings insofar as the grand jury considers matters related to the petitioners is hereby denied.

APPENDIX

# the Mobile
# PRESS

Contents Copyrighted 1980 by The Mobile Press

## Gregory indictment dismissed

A bank conspiracy indictment against Pensacola, Fla., financier E. A. Gregory, his wife and three other persons has been dismissed by U. S. District Judge W. Brevard Hand of Mobile.

His order, signed Tuesday, held that the indictment was "insufficient."

The action drops charges against Gregory; his wife Vonna Jo; Mobile businessman Mark Lyons III; G. W. Atkinson and Roberty T. Spurlock Jr.

All at one time were associated with the now-defunct Wilcox County Bank of Camden, Ala. They had been accused of misapplying bank funds by making loans to business entities affiliated with Gregory or his wife.

The indictment against the five was brought by a federal grand jury in Mobile April 16. A month later the Gregorys filed an assortment of motions asking that the indictment be dismissed, charging, among other things, abuse of the grand jury process, "criminal conduct" by government agents and "vindictiveness" on the part of prosecutors.

Judge Hand did not address those allegations in his order, confining his decision to the question of insufficiency of the indictment.

"The indictment uses the disjunctive 'or' in alleging that the defendants committed certain acts and offenses. Although a statute may allege acts in the disjunctive, as opposed to the conjunctive 'and,' the general rule is that in order for an indictment to sufficiently apprise the defendants of the acts with which they are charged, the indictment must allege the acts in the conjunctive rather than the disjunctive.

"The failure of an indictment to allege acts in the conjunctive renders the indictment insufficient," the order states.

"Although this ground may seem to be a hypertechnical basis for dismissing an indictment, when the rights of a criminal defendant are at stake the Constitution strictly requires that the accused—'be informed of the nature and cause of the accusation'—."

The Gregorys' also had asked that Judge Hand disqualify himself in the case, citing adverse rulings by Hand in previous court cases concerning Gregory.

Judge Hand denied that motion, saying, "Because the affidavits do not allege bias arising from conduct extra-judicial in nature, there is no basis for disqualification."

U. S. Attorney William A. Kimbrough said the case would be re-submitted to the same grand jury this Friday.

Stewart Thames, a Merchants National Bank official is foreman of that jury. In one of his motions, Gregory had alleged abuse of the grand jury process because his bank had done business with Merchants.

Hand did not rule on that motion, but Kimbrough said today, "I don't see any problem with it."

# Charges against bankers are dismissed

The twelve-count indictment against five former Wilcox County Bank officials charging conspiracy and misapplication of funds were dismissed yesterday by U. S. District Judge Brevard Hand.

Dismissal before Judge Hand came following a hearing last Friday during which the defendants argued that it was not possible for the indictment to stand without offending the rule against multiplicity which forbids subjecting a defendant to multiple punishment for the same alleged criminal conduct.

The motion for dismissal further contended that the indictment violated the defendants' rights in that they were not fully informed of the charges against them.

Judge Hand's order dismissing the indictments against E. A. Gregory, Vonna Jo Gregory, Gerald Atkinson, Mark Lyons III, and Rob Spurlock, agreed with the arguments raised by their attorneys when he stated in his order that, "after reviewing the indictment the court is of the opinion that the indictment is due to be dismissed."

The motion for dismissal also pointed out that Mr. and Mrs. Gregory were neither officials nor employees of the bank at the time of the issuance of loans to various corporations in which they were stockholders.

. Contacted at his Pensacola office Gregory said, "We hope that this puts to rest the FDIC's harassment and that we can now go back to work to repay the creditors who have been so understanding during the past two years."

U. S. Attorney William Kimbrough was also contacted yesterday and he said there were technical errors in the indictments. He said the defendants "were right" under the law in seeking relief through motions for dismissal..

The U. S. Attorney said his office will try and get a new indictment before a grand jury in Mobile this Friday.

A source within the FDIC expressed surprise at the dismissal and acknowledged that certain information has been withheld relative to the charges against the defendants. Information from the FDIC also stated that that agency was "trying to keep Lyons from going bankrupt." The Lyons referred to is Mark Lyons III, owner of Wilcox County Bank at the time it was closed.

# Progressive Era

VOLUME 121 NUMBER 22 CAMDEN, ALABAMA 36726 (USPS 661-920) WEDNESDAY, MAY 28, 1980

The Birmingham News Wed., May 28, 1980

# Gregory case DA to make new try

Mobile — The government will seek new indictments against a Florida banker on charges of bank fraud involving two Alabama banks.

Banker Ed Gregory and four others were indicted on 12 counts by a federal grand jury in April but a federal judge Tuesday dismissed them on a technicality.

U. S. Atty. Billy Kimbrough said he would seek new indictments against the five.

The indictments were thrown out by U. S. Dist. Judge W. Brevard Hand because of the use of the word "or" instead of "and" in referring to alleged wrongdoing by the five defendants.

"Using the word 'or' in this kind of a proceeding is a no-no," said Kimbrough, "and I should have known it. I just forgot."

THE INDICTMENT names Gregory, his wife Vonna Jo, an associate, G. W. Atkinson, a former bank employee, Robert Spurlock, and the former president of the Wilcox County Bank, Mark Lyons III.

They were charged with conspiracy, misapplication of funds and wire fraud.

The alleged wrongdoings occurred in connection with banks in Macon and Wilcox counties in which the Gregorys at one time owned stock.

Regarding the dismissal Tuesday, Gregory said, "We are very happy."

Gregory, of Pensacola, Fla., became embroiled in the case of former Alabama State Treasurer Melba Till Allen who was convicted in 1978 of violating state ethics laws.

He had been indicted in Montgomery County of violating state ethics law for allowing Mrs. Allen the use of an airplane. That indictment was later dropped.

In March of 1978, Gregory and his wife were indicted by the Macon County grand jury on bank fraud, which, too, was later dismissed.