**In re: GREEN GRAND JURY PROCEEDINGS**

Nos. 05–GP–03(JMR), 05–GP–04(JMR), 05–GP–05(JMR).

United States District Court, D. Minnesota.

May 27, 2005.

## ORDER

ROSENBAUM, Chief Judge.

Three juveniles, C.A.S., A.J., and M.A., received grand jury subpoenas dated April

6, 2005. Two of the juveniles had previously talked with federal agents, but subsequently declined to speak further with the agents. The subpoenas were served thereafter, directing the juveniles to appear, testify, and produce a complete set of fingerprints, an oral DNA swab, and color photos of each child's clothed body.

The juveniles move to quash the subpoenas, arguing that a grand jury subpoena is improper when investigating a crime arguably committed by a juvenile, because a juvenile has no right to a grand jury indictment. The two juveniles who declined to answer the agents' questions claim the subpoenas were served in retaliation for their unwillingness to answer. None of the juveniles have been charged with a crime. At a hearing on the motions to quash, the Assistant United States Attorney waived the grand jury request for DNA samples.

After considering the matter, the Court denies the motions to quash the subpoenas, subject to the conditions described below.

## I. *Discussion*

The subjects claim a grand jury subpoena may not be used to investigate juveniles, who have no right to indictment by grand jury. They further claim Congress has defined those circumstances under which a juvenile may be fingerprinted and photographed. According to the subjects, these circumstances are set forth in the Juvenile Delinquency Act ("JDA"), which provides:

> [w]henever a juvenile is found guilty of committing an act which if committed by an adult would be a felony that is a crime of violence ... such juvenile shall be fingerprinted and photographed.

18 U.S.C. § 5038(d) (2005). The subjects claim the present grand jury· subpoenas fail to comport with the JDA.

## A. *Grand Juries and Juveniles*

■ Federal courts surrender jurisdiction over most juveniles to state courts. 18 U.S.C. § 5032 (2005). When federal courts assume jurisdiction, the case against the juvenile proceeds by way of an information or a misdemeanor charge alleging the juvenile to be delinquent. *Id.;* 18 U.S.C. § 3401(g) (2005). Determination of a juvenile's status under the JDA is a civil prosecution. *United States v. A.W.J.,* 639 F.Supp. 1558, 1559 (D.Minn.1986). A juvenile may only be tried as an adult with the juvenile's consent, or on a motion to transfer the case to federal court for adult criminal prosecution. 18 U.S.C. § 5032 (2005).

The subjects claim a grand jury is barred from investigating juveniles. They argue that grand juries issue indictments to which juveniles are not constitutionally entitled, and because juvenile delinquency proceedings are civil, the grand jury may not be used to investigate a civil matter. They point to the Ninth Circuit's holding in *United States v. Eric B.,* 86 F.3d 869 (9th Cir.1996), to support this proposition. Their reliance is misplaced.

In *Eric B.,* a boy of twelve, who shot a seven-year-old in the head, was convicted of involuntary manslaughter. *Id.* at 871. He appealed, arguing that the government improperly used a grand jury subpoena to gain access to his school records. *Id.* at 877. The court declined to define the scope of a grand jury's participation in a juvenile investigation, holding only that any error, "... if an error exists, ... does not rise to the level of plain error and should be regarded as harmless beyond a reasonable doubt." *Id.* at 878. The court footnoted the inconsistency in appellant's argument, saying, "[W]hile recognizing the grand jury is a body acting as a constitutional safeguard, appellant tries to make hay of the fact that it was utilized where it

was not constitutionally mandated." *Id.* at 878 n. 14.

As in *Eric B.*, these juveniles attempt to enmesh the Court in a Catch 22: they note, first, that juveniles have no right to an indictment unless a court certifies the juvenile as an adult. Second, a grand jury's function is to issue indictments. Ergo, absent the absolute right to an indictment, it is improper for a grand jury to investigate a juvenile offense. This argument fails.

As an initial matter, the argument glorifies form over substance. Juvenile delinquency matters, while denominated civil prosecutions, are criminal in fact. It is only the perpetrator's age which obviates the need for an indictment. This age-based status—being subject to adult certification—is not absolute. 18 U.S.C. § 5032 (2005). If certified, an alleged perpetrator falls within the ambit of an indictment under the Fifth Amendment. The government and the grand jury have a legitimate interest in the investigation and prosecution of an act which may be a felony.

The argument also presupposes that the grand jury definitively knows the perpetrator is a juvenile. Even the attorney who advanced this argument could not gainsay the possibility that, while a crime may have a juvenile participant, the youngster might have also had an adult accomplice—a person fully susceptible to the power of a grand jury.

■ This Court finds a grand jury is not barred from issuing a subpoena to a juvenile or investigating a crime which may have been committed by a juvenile. The grand jury is a powerful investigative engine unique in our system. It performs its investigatory function, while constitutionally protecting potential defendants. *In re Grand Jury Proceedings Involving Vickers,* 38 F.Supp.2d 159, 162 (D.N.H.1998).

The putative perpetrator's age does not strip it of its powers or its protections.

**B.  *Juvenile Delinquency Act***

■ The subjects claim the grand jury's request for fingerprints and photographs is barred by the JDA, which defines a time when a juvenile may be fingerprinted and photographed. 18 U.S.C. § 5038(d) (2005). This argument fails. The JDA certainly sets out a time when Congress requires that a juvenile's fingerprints and photographs must be taken. But in defining a time when prints and photos must be taken, Congress did not bar doing so at any other time. The Court cannot find that Congress has so cabined the world. Similarly, the Court declines to attempt to resolve whether even Congress can set the bounds of a grand jury investigation by statute or otherwise.

**C.  *Propriety of Subpoenas***

■■ Properly issued grand jury subpoenas enjoy a presumption of regularity. *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 300–01, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). They must still be relevant and particularized to the investigation being undertaken, but the burden of showing irregularity falls upon those who seek to quash the subpoena. *Id.* at 301, 111 S.Ct. 722.

Here, two subjects have suggested irregularity, claiming their subpoenas were issued in retaliation for their refusal to speak with federal agents. The Assistant United States Attorney has advised the Court in this regard. From his assurances, the Court is satisfied, even assuming the subjects' factual recitations are accurate, that the subpoenas were issued in good faith, and not for an improper purpose.

The Court has been assured that the juveniles' subpoenaed material will be pro-

tected from entry into federal databases. Accordingly the Court, at this time, sees no need to issue an order directing the exact mechanism by which this material is to be segregated, but remains amenable to further proceedings in this regard if necessary.

## II.  *Conclusion*

For the foregoing reasons, the motions to quash grand jury subpoenas are denied.

IT IS SO ORDERED.